

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KETTLER INTERNATIONAL, INC.,

    Plaintiff-
    Counterclaim Defendant,

v.                                                Civil Action No. 2:14cv189

STARBUCKS CORPORATION,

    Defendant-
    Counterclaim Plaintiff.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Kettler Int'l, Inc.'s ("Plaintiff" or "Kettler") Motion for Sanctions ("Motion"). Doc. 35. A hearing was held on January 20, 2015. Ruling from the bench, the Court **GRANTED** the Motion in Part, **FINDING** that Defendant Starbucks Corp.'s ("Defendant" or "Starbucks") conduct constituted spoliation, but **WITHHELD** the imposition of sanctions pending further briefing. The Court now issues this Opinion and Order explaining its reasoning.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This declaratory judgment action arises out of allegedly defective patio furniture sold by Kettler to Starbucks. Beginning in approximately 2009, Plaintiff began selling "Carlo" chairs to Starbucks, its agent, and/or its contractors. Compl. ¶ 1. Delivery continued until 2013. Id. ¶ 15. Starbucks never refused a delivery of Carlo chairs. Id. ¶ 16. This Motion centers on Defendant's destruction of approximately 7,300 of 7,500 chairs used in Starbucks stores.[1]

---

[1] The parties agree that Starbucks purchased more than 7,500 chairs, but that many chairs were replaced in the ordinary course of business, separate from the events described below.

1

The origin of this dispute can be traced to January 1, 2011, when Starbucks customer Hae Jee was involved in an accident that occurred in a Los Angeles, CA Starbucks when the leg of a Carlo chair in which she was sitting broke. Doc. 43 at 3. "Between 2011 and 2013, Starbucks received complaints of four (4) alleged personal injuries involving the sudden collapse of a Carlo chair." Id. In a letter dated April 19, 2012, Defendant's third-party claim administrator notified Kettler of Ms. Jee's claim. Doc. 43-3 at 62. Moreover, the same administrator notified Kettler on August 20, 2012 of a second claim involving a Starbucks customer, Mr. Craig Roberts. Doc. 43-4 at 2. Starbucks also advised the Court that two other chairs failed while being used by patrons.

In December 2012, Starbucks was sued in California state court by Hae Jee for an injury that resulted from the alleged malfunctioning of one of the chairs. Kettler Intern., Inc. v. Starbucks Corp., __ F. Supp. 3d __, 2014 WL 5461842, at *1 (E.D. Va. Oct. 21, 2014); see also Doc. 16-1 at 21. On September 23, 2013, Starbucks filed a third-party complaint against Kettler and Stanislaus Funding, Inc. for indemnity and failure to obtain insurance in accordance with the Starbucks' Supplier Handbook. Kettler, 2014 WL 5461842, at *1; see also Doc. 36-1 at 21. The California state court case pertained to one discrete chair.

Concerned about the Carlo chair, Starbucks commissioned SGS, a third-party, to test the Carlo Chair for defects. Doc. 43-3 at 32. SGS received the sample chair on October 18, 2013. Id. SGS prepared its report on November 11, 2013, indicating that the Carlo chair failed certain impact tests. Id. It appears that only one chair was tested by SGS. See id. ("Sample Description: Outdoor Chair."). During discovery, Starbucks withheld production of this report on the basis of work product privilege.[2] Doc. 43-2 at 2.

---

[2] It has since been produced, but only as an exhibit to its opposition to the instant Motion.

2

On February 10, 2014, Starbucks and DAVACO, Inc. entered into an agreement for the removal and recycling of Carlo Chairs from Starbucks stores.[3] Doc. 36-5 at 2; Doc. 43-1 at 1. "Starbucks Legal" requested the services. Doc. 36-5 at 2. Mesa Logistics Group was the party tasked with recycling the chairs. Id. Starbucks asked DAVACO to set aside two hundred (200) of the removed chairs be set aside and stored, not recycled. Doc. 43-1 at 2. According to DAVACO's Director of Operations, "Starbucks did not ask DAVACO to select the two hundred (200) Carlo chairs to be set aside and stored on the basis of any physical criteria, including any observable defect, quality or characteristic." Id. Accordingly, DAVACO caused two hundred (200) of the Carlo chairs that had been removed from Starbucks Stores, but were now in a warehouse, to be pulled at random and set aside for storage. Id. The first chairs were not removed until March 17, 2014. Id. at 3. The last of the chairs appear to have been removed on May 18, 2014. Id. at 21.

> While removal and destruction of the chairs was ongoing, on April 8, 2014, Starbucks sent Kettler a letter titled "Notice of Breach of Warranty (Commercial Code Section 2607)." In the letter, Starbucks informed Kettler that it had experienced failures in some of the Carlo chairs, and that third-party laboratory testing confirmed these failures. As a result, Starbucks stated it had begun removing the Carlo chairs from its stores, that it was collecting and recycling the chairs, and that it would retain a "discrete sampling" of the chairs for inspection. The letter also informed Kettler that Starbucks' counsel was "instructed to initiate legal proceedings against Kettler to compel Kettler to make good on the warranties and misrepresentation" pertaining to the sale of the chairs. Furthermore, Starbucks informed Kettler that it would "pursue its remedies arising from the purchase of all Carlo chairs, plus consequential and incidental damages related to the removal, storage and recycling of said Carlo chairs."

Kettler, 2014 WL 5461842, at *2 (internal citations omitted); see also Doc. 36-1 at 9.

> On April 10, 2014, Kettler replied to this letter. Id. Kettler asked Starbucks to provide test results, incident reports, an exact count of the defective chairs, further explanation of the alleged breach of contract and warranties, and all other relevant information. Starbucks did not respond to this letter. On April 21, 2014, Kettler again mailed a letter to Starbucks, asking it to provide proof that the allegedly

---

[3] At the hearing, the Court learned that "recycling" the chairs constituted destruction of the chairs.

3

> defective chairs were purchased within the last year, and thus covered by the one year warranty.
>
> Counsel for the parties exchanged phone calls on April 22, and Kettler sent another letter following this conversation. According to the letter, counsel for Starbucks informed Kettler he did not know when the chairs Starbucks had preserved were manufactured or how many of the 7,500 Carlo chairs Starbucks had already recycled.

Kettler, 2014 WL 5461842, at *2 (internal citations omitted); see also Doc. 36-1 at 11–20. On May 2, 2014, Kettler responded in another letter alerting Starbucks of its "obligation to preserve *every chair* upon which a claim is being made[.]" Doc. 36-1 at 19.

That same day, on May 2, 2014, Kettler filed its three-count Complaint in this Court seeking a declaratory judgment that (1) it has not breached any warranty; (2) it has not breached any contractual term; (3) and that Starbucks is not entitled to rescission. Doc. 1. Starbucks was served on May 7, 2014. Doc. 4. Starbucks continued destroying chairs after being served with notice of this lawsuit.[4]

On October 16, 2014, the Court held a hearing on Defendant's Motions to Dismiss and/or Transfer Venue. Doc. 25. Concerned about the letters indicating that chairs had been recycled, the Court addressed the issue towards the end of the hearing. The Court first alerted counsel to the Silvestri v. General Motors case stating, "And you better save the chairs. You better not recycle them, because if you do you risk losing any rights you have against Kettler for defective chairs." Doc. 33 at 31. A few minutes later, the Court had the following, lengthier discussion with counsel for Starbucks:

> THE COURT: And I did want counsel to be aware that the Fourth Circuit decision on spoliation is one of the stronger decisions in favor of the party claiming spoliation that you're going to find. So the destruction of any evidence at this point—I mean, actually, your duty not to destroy the evidence begins when you

---

[4] Plaintiff advised the Court that 1,584 chairs were destroyed after Kettler demanded Starbucks preserve them, and 489 chairs after Kettler served Starbucks with the instant Complaint. Doc. 44 at 1. Starbucks did not contest these allegations.

4

> knew or should have known that there would be litigation involving that evidence, so anything you've already destroyed could subject you to sanctions.
>
> In the Silvestri case the sanction was they dismissed the plaintiff's claim because General Motors didn't have an opportunity to examine the automobile before it was apparently crushed. So the only thing I can say to you is don't destroy any more chairs. I don't know if you've destroyed any of them yet, but if you have you'll have to deal with that. But don't destroy any more.
>
> MR. COX: We have not, Your Honor.

Doc. 33 at 34–35. Mr. Cox filed an affidavit indicating that he understood the Court to be referring to the 200 chairs that Starbucks had reserved as a sample. Doc. 43-2 at 5–6.

On October 29, 2014, Starbucks filed its Answer and Counterclaim. Doc. 31. The Counterclaim contains four counts: breach of express warranties, breach of implied warranties, breach of contract, and negligent misrepresentation. Id. Part of the basis of its action is that the Carlo chair "fails to meet chair standards specified by the [Business and Institutional Furniture Manufacturer's Association] BIFMA with respect to leg strength as the result of a **manufacturing and/or design defect**." Countercl. ¶ 9 (emphasis added). Starbucks has also alleged that the chairs "were not of even kind and quality[.]" Id. ¶ 20.

Kettler alleges it is not the manufacturer of the Carlo chair, but is a distributor. It claims three parties manufactured the chairs: MWH, a German manufacturer; NGN, a Chinese manufacturer, and Quinhong, also a Chinese manufacturer. MWH and NGN were the original manufacturers. However, when MWH ceased operations, Kettler contracted with Quinhong to manufacture the chairs. A potential dispute in this case is whether Kettler designed the Carlo chair by providing samples to Quinhong.

Plaintiff filed the instant Motion on November 17, 2014. Doc. 35. Defendant responded in opposition on December 3, 2014. Doc. 43. Plaintiff filed its reply on December 11, 2014. Doc. 44.

On January 5, 2015, Plaintiff filed a motion for leave to file supplemental authority. Doc. 55 at 1. In its supplemental filing, Plaintiff advised the Court of specific, additional chairs that Starbucks has destroyed: the chair(s) involved in the SGS testing that Starbucks performed prior to bringing suit, the chair involved in the Hae Jee litigation in California state court, and two of the other three chairs that Starbucks identified as having been involved in accidents at its stores. Doc. 55 at 2. The Court granted the motion to file, and offered Starbucks an opportunity to file a brief response. Doc. 57. Addressing the Hae Jee chairs, and two of the other three chairs involved in accidents, Starbucks asserted that store-level employees destroyed the chairs before the corporate office even learned of the accidents. Doc. 58 at 1. Starbucks asserted that the chair(s) destroyed by SGS was destroyed as part of SGS' standard procedures. Id. at 3. However, a document produced by Starbucks appears to show that Starbucks was the party that chose to have the SGS chair destroyed, as a box labeled "Destroy/Discard Sample after 30 days" on the "Service Request Form" was marked with an "X."

## II. LEGAL STANDARD

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Id. at 591. "'When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted,' a district court may use its inherent power to control the judicial process to determine an appropriate sanction to the extent necessary to redress conduct which disrupts the judicial process." Taylor v. Mitre Corp., No. 1:11cv1247, 2012 WL 5473715, at *4 (E.D. Va. Sep. 10, 2012) (quoting

6

King v. Am. Power Conversion Co., 181 F. App'x 373, 376 (4th Cir. 2006)), adopted by Taylor v. Mitre Corp., No. 1:11cv1247, 2012 WL 5473573 (E.D. Va. Nov. 8, 2012). Such sanctions may include, inter alia, dismissal or judgment by default, preclusion of evidence, an adverse inference instruction, a monetary fine, and/or an assessment of attorney's fees and costs. Taylor, 2012 WL 5473715, at *4. In order to justify the sanction of dismissal, "the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." Silvestri, 271 F.3d at 593.

### III. ANALYSIS

Plaintiff moved the Court to dismiss the "portion of Starbucks' claims applicable to any chair that Starbucks has destroyed and awarding KETTLER its attorney's fees and costs in bringing this motion," as Starbucks' conduct was both egregious and substantially prejudicial. Doc. 36 at 2. Starbucks argued that its conduct was not egregious because the chairs were removed for public safety purposes, they preserved a sample to be further tested, and repeatedly offered Kettler the opportunity to inspect the remaining chairs. Doc. 43 at 10. As to prejudice, Starbucks argues that an inspection of every chair is not necessary because Starbucks is alleging that "the Carlo product, rather than any one (1) chair purchased by Starbucks, is defective." Id.

a. **Spoliation**

The first issue the Court considered is when the duty to preserve evidence arose. "The duty to preserve material arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Silvestri, 271 F.3d at 591.

7

The Court found that the duty to preserve started in October 2013, when Starbucks contracted with SGS to test the Carlo chair for defects. Starbucks asserted the work product doctrine as a defense to production of the test results. Federal Rule of Civil Procedure 26(b)(3) limits application of the work product doctrine to documents "prepared in anticipation of litigation[.]" See also Sanford v. Virginia, No. 3:08cv835, 2009 U.S. Dist. LEXIS 66484, at *8 (E.D. Va. July 31, 2009).

This conclusion is further supported by the fact that by the time it tested for defects, Starbucks had notice of four claims of Carlo chair failures. Furthermore, it tendered notice to Kettler concerning two claims made against Starbucks for chair failures and filed a third-party complaint in California state court against Kettler seeking indemnity in the Hae Jee case. Even though only one chair is at issue in the California state case, Starbucks was engaging in conduct that showed its eagerness to hold Kettler liable for the plaintiff's personal injuries.

Additionally, the Court found that Starbucks' conduct amounted to spoliation. After anticipating litigation, Starbucks engaged in a course of conduct that resulted in the destruction of over 7,000 chairs, leaving only 200 left for discovery purposes.[5] The chairs are undoubtedly relevant to this action, as whether or not the chairs were defective could prove dispositive of this litigation.[6] Thus, the Court was faced with the question of what the appropriate sanction should be.

---

[5] Even had Kettler failed to produce the form indicating that Starbucks directed SGS to destroy the chairs, Starbucks would have been responsible for SGS's destruction. See Silvestri, 271 F.3d at 591 ("If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.").

[6] Starbucks cited a Third Circuit case, Schmid v. Milwaukee Tool Corp., 13 F.3d 76 (3d. Cir. 1994), arguing that saving only exemplars in a design defect case is appropriate. In Schmid, the Third Circuit noted that in a design defect case, the defendant's "need for immediate access to the particular saw involved in the accident was greatly diminished." Id. at 79. Additionally, the issues involved in the case were better determined by "inspecting and testing multiple saws of the same design than by inspecting the particular saw involved in the accident." Id. at 79–80. Notably, however, the plaintiff in Schmid did not destroy the saw, but rather had the saw disassembled "in an attempt to determine why the guard was closing slowly. Disassembly was necessary to determine whether Schmid

### b. Sanctions

Under Silvestri, dismissal of Starbucks' Counterclaim is appropriate if the Court finds "(1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." Silvestri, 271 F.3d at 593. Plaintiff argued that the Court could find dismissal was appropriate at this time. However, "dismissal should be avoided if a lesser sanction will perform the necessary function." Id. at 590.

At this time, the Court finds that it does not have enough information before it to determine the appropriate sanction. The fact that there are 200 chairs remaining should be sufficient to determine if a design defect exists; however, the Court is uncertain if Kettler can fully develop its defenses based on the remaining 200 chairs. The Court also believes that giving Kettler an opportunity to examine the chairs so as to determine what information it can gather from such examination will better enable the Court to determine the extent of any prejudice Kettler has suffered. The Court is also concerned about Starbucks' normal recycling procedures for the chairs, as the parties do not dispute that approximately 5,000 chairs were destroyed prior to the litigation in the ordinary course of business.[7] Accordingly, the Court withheld the imposition of sanctions at this time.

---

had a meritorious claim against the manufacturer of the saw." Id. at 79. The Fourth Circuit has not explicitly adopted this line of reasoning, but this appears inconsistent with Silvestri. There, the plaintiff's theory of the case was that the airbags did operate properly. Silvestri, 271 F.3d at 587. The car was subsequently repaired, located, and GM was able to determine from the intact module that the airbag system had no defect. Id. However, GM was still prejudiced because it did not have access to the only evidence to develop its defenses adequately. Id. at 594. Thus, even though GM had some evidence to show that there was no defect, dismissal was still appropriate because of the prejudice in exploring all its possible defenses. Id. Moreover, while the Plaintiff in Schmid could explain the disassembly of the crucial evidence because he had a duty to determine in good-faith if a cause of action existed, and the disassembly was to determine if there was a design defect, Starbucks cannot explain how the destruction of over 7,000 chairs was necessary to determine if a cause of action existed or if there was a design defect. For that reason alone, Schmid can be distinguished.

[7] These are not the only factors that the Court will consider in fashioning a sanction, but merely examples. Moreover, the fact that the Court did not impose the sanction of dismissal at this time does not mean that it will not upon further briefing of the parties.

### IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion in part, Doc. 35. The Court withheld the imposition of sanctions pending further briefing. Once Plaintiff has filed its supplemental submission on sanctions, Defendant shall have eleven (11) days to file its opposition, and Plaintiff will have three (3) days thereafter to file a reply brief.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: January 28, 2015