IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

KETTLER INTERNATIONAL, INC.,

    Plaintiff,

    v.                                              Civil Action No. 2:14cv189

STARBUCKS CORPORATION,

    Defendant.

## OPINION & ORDER

This matter is before the Court pursuant to Plaintiff Kettler International, Inc.'s ("Plaintiff" or "Kettler") Motion for Sanctions ("Motion").  Doc. 35.  At a hearing held on January 20, 2015, the Court ruled from the bench and granted the Motion in part, finding that Defendant Starbucks Corporation's ("Defendant" or "Starbucks") conduct constituted spoliation, but withheld the imposition of sanctions pending further briefing.  Doc. 62.  For the reasons set forth herein, the relief sought in the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Factual Background

This declaratory judgment action arises out of allegedly defective patio furniture sold by Plaintiff to Defendant.  From approximately 2009 to 2013, Plaintiff began selling Carlo Model chairs ("Carlo chairs" or "chairs") to Starbucks, its agents, and/or its contractors.  Compl. at 1, 4.  Over the course of this relationship, Starbucks its agents, and/or its contractors ultimately purchased approximately 13,870 individual Carlo chairs.  Doc. 77 at 1.  Of these 13,870 chairs, it was determined that 4,791 chairs were unaccounted for and had likely been destroyed in the

ordinary course of prior store renovations.[1] Id. at 29. The genesis of the present dispute can be traced to January 1, 2011, when Starbucks customer Hae Jee was involved in an accident in a Los Angeles' Starbucks when the leg of a Carlo chair in which she was sitting broke. Doc. 43 at 3. "Between 2011 and 2013, Starbucks received complaints of four (4) alleged personal injuries involving the sudden collapse of a Carlo chair." Id. In a letter dated April 19, 2012, Defendant's third-party claim administrator notified Kettler of Ms. Jee's claim, Doc. 43, Ex. 3 at 62, and the same administrator notified Kettler on August 20, 2012 of a second claim involving another Starbucks customer, Mr. Craig Roberts. Doc. 43, Ex. 4 at 2.

Concerned about the Carlo chair, Starbucks' Legal commissioned SGS North America ("SGS") to test the chair through a "Service Request Form" signed on September 20, 2013, Doc. 71, Ex. 14, and SGS received a sample chair on October 18, 2013. Doc. 43, Ex. 3 at 32. SGS prepared its report on November 11, 2013, which indicated that the Carlo chair failed certain impact tests. Id. It appears that only one chair was tested by SGS, see id. ("Sample Description: Outdoor Chair"), and on the September 20, 2013 "Service Request Form" submitted by Starbucks Legal, Starbucks requested the sample chair be destroyed after thirty days.[2] Doc. 71, Ex. 14. On February 17, 2014, Starbucks and DAVACO, Inc. ("DAVACO") entered into a contract for the removal and "recycling" of all Carlo chairs. Doc. 36, Ex. 5 at 2; Doc. 43, Ex. 1 at 1. In fact, Starbucks Legal requested the services. Doc. 36, Ex. 5 at 2. After consulting SGS regarding sample sizes, Starbucks asked DAVACO to set aside and store 200 of the removed chairs. Doc. 43, Ex. 2 at 2. "Starbucks did not ask DAVACO to select the two hundred (200)

---

[1] This fact is not necessarily relevant to Starbuck's spoliation, but does play a role in Kettler's argument that the 200 chair sample size was not representative of the original 13,870 chair lot size.

[2] On the "Service Request Form," Starbucks had the option of checking one of two boxes relating to the test chair, the "Return Sample Immediately" box or the "Destroy/Discard Sample after 30 days" box. Starbucks' checked the "Destroy/Discard" box.

Carlo chairs to be set aside and stored on the basis of any physical criteria, including any observable defect, quality or characteristic."[3] Id.

The first chairs were removed on March 17, 2014, id. at 3, and while removal of the chairs was ongoing, on April 8, 2014 Starbucks sent Kettler a letter titled "Notice of Breach of Warranty (Commercial Code Section 2607)." Kettler Intern., Inc. v Starbucks Corp., __ F. Supp. 3d __, 2014 WL 5461842, at *2 (E.D. Va. October 21, 2014); see also Doc. 36, Ex. 1 at 9. In the letter, Starbucks informed Kettler that it had experienced failures in some of the Carlo chairs and that third-party laboratory testing confirmed these failures. Id. As a result, Starbucks stated that it had begun collecting and recycling the chairs and it would retain a "discrete sampling" of them for inspection. Id. The letter also informed Kettler that Starbucks' counsel was "instructed to initiate legal proceedings against Kettler to compel Kettler to make good on the warranties and misrepresentation," and Starbucks informed Kettler that it would "pursue its remedies arising from the purchase of all Carlo chairs, plus consequential and incidental damages related to the removal, storage and recycling of said Carlo chairs." Id.

On April 10, 2014, Kettler replied to this letter and asked Starbucks to provide test results, incident reports, an exact count of the defective chairs, and all other relevant information. Id. Starbucks did not respond to this letter. Id. On April 21, 2014, Kettler again mailed a letter to Starbucks asking it to provide proof that the allegedly defective chairs were purchased within the last year and thus covered by the one-year warranty. Id. In a subsequent letter, counsel for Starbucks informed Kettler he did not know when the remaining chairs were manufactured or how many Starbucks had already recycled. Id. On May 2, 2014, Kettler responded by alerting Starbucks of its "obligation to preserve *every chair* upon which a claim is being made," Doc. 36,

---

[3] A detailed table showing the removal of chairs was provided in the affidavit submitted by DAVACO's Director of Operations.

Ex. 1 at 19 (emphasis in original), and Starbucks was served with the present action on May 7, 2014. Doc. 3. The last of the chairs appear to have been removed on May 18, 2014. Doc. 43, Ex. 2 at 2.

**B. Procedural History**

On May 2, 2014, Kettler filed its three-count Complaint in this Court seeking declaratory judgment that (1) it has not breached any warranty; (2) it has not breached any contractual term; and (3) that Starbucks is not entitled to rescission. Doc. 1. According to Plaintiff, "Starbucks destroyed **1,584 chairs after KETTLER demanded Starbucks preserve them** and **489 chairs after KETTLER served this lawsuit on Starbucks.**" Doc. 44 at 1 (emphasis in the original). At a hearing on October 16, 2014, this Court first alerted counsel for Starbucks to <u>Silvestri v. General Motors</u>, 271 F.3d 583 (4th Cir. 2001) by stating, "[a]nd you better save the chairs. You better not recycle them, because if you do you risk losing any rights you have against Kettler for defective chairs." Doc. 33 at 31.

On October 29, 2014, Starbucks filed its Answer and Counterclaim. Doc. 31. The Counterclaim contains four counts: (1) breach of express warranties, (2) breach of implied warranties, (3) breach of contract, and (4) negligent misrepresentation. <u>Id.</u> Therein, Starbucks argues that the Carlo chair "fails to meet chair standards specified by the [Business and Institutional Furniture Manufacturer's Association] BIFMA with respect to leg strength as the result of a <u>manufacturing and/or design defect.</u>" Countercl. at 24 (emphasis added). Plaintiff filed its Motion for Sanctions on November 17, 2014, Doc. 35, and in its supplemental filing advised the Court of specific chairs that Starbucks has destroyed: (1) the chair(s) involved in the SGS testing that Starbucks performed prior to bringing suit; (2) the chair involved in the Hae Jee

litigation in California state court; and (3) two of the other three chairs that Starbucks identified as having been involved in accidents at its stores. Doc. 55 at 2.

At the hearing on the Motion for Sanctions, "the Court found that Starbucks' conduct amounted to spoliation" because, "[a]fter anticipating litigation, Starbucks engaged in a course of conduct that resulted in the destruction of over 7,000 chairs." Doc. 62 at 8. The Court "was faced with the question of what the appropriate sanctions should be," as "dismissal should be avoided if a lesser sanction will perform the necessary function." Id. at 9 (quoting Silvestri, 271 F.3d at 590). Kettler now argues that, on top of attorney's fees and costs, the Court should sanction Starbucks by "dismissing" all of Starbucks' claims except those pertaining to the 200 remaining Carlo chairs. Doc. 77 at 1. They argue this remedy is proper "(1) because Starbucks' willful spoliation of almost all of the evidence in this case is egregious and outrageous; (2) because evidence developed in discovery shows that the sample of chairs is not representative of all Carlo chairs; and (3) because KETTLER has been substantially denied the ability to defend its claim." Id. at 2.

## II. LEGAL STANDARDS

"'When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted,' a district court may use its inherent power to control the judicial process to determine an appropriate sanction to the extent necessary to redress conduct which disrupts the trial process." Taylor v. Mitre Corp., No. 1:11cv1247, 2012 WL 5473715, at *4 (E.D. Va. Sep. 10, 2012) (quoting King v. Am. Power Conversion Co., 181 F. App'x 373, 376 (4th Cir. 2006)), adopted by Taylor v. Mitre Corp., No. 1:11cv1247, 2012 WL 5473573 (E.D. Va. Nov. 8, 2012). Such sanctions may include, inter alia, dismissal or judgment by default, preclusion of evidence, an adverse inference instruction, a

monetary fine, and/or an assessment of attorney's fees and costs. Taylor, 2012 WL 5473715, at

*4. "When imposing sanctions, 'the trial court has discretion to pursue a wide range of responses

both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning

the improper conduct.' But dismissal should be avoided if a lesser sanction will perform the

necessary function." Silvestri, 271 F.3d at 590 (quoting Vodusek v. Bayliner Marine Corp., 71

F.3d 148, 156 (4th Cir. 1995); West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.

1999)) (internal citations omitted).

In order to use the sanction of dismissal, "the district court must consider both the

spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's

conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the

spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to

defend the claim." Silvestri, 271 F.3d at 593.  In order to justify dismissal, the United States

Court of Appeals for the Fourth Circuit requires a certain level of mental culpability, which is

measured in accordance with the level of prejudice the innocent party suffered.  Id.  Stated

succinctly, the more prejudice suffered, the less culpability required for dismissal.  See id.  In

Silvestri, the Fourth Circuit granted the sanction of dismissal when the spoliator attorney's

conduct "may have been either deliberate or negligent," id., and in a later case clarified that "the

alleged destroyer must have known that the evidence was relevant to some issue in the

anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or

destruction." Turner v. United States, 736 F.3d 274, 282 (4th Cir. 2013).

In Projects Management Co. v. Dyncorp Intern. LLC, the Fourth Circuit emphasized that

the following factors "must" be considered "[b]efore exercising its inherent power to dismiss a

case based on the wrongdoing of a party in the judicial process."  734 F.3d 366, 373 (4th Cir.

2013) (emphasis added).

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Id. at 373–74 (quoting United States v. Shaffer Equipment Co., 11 F.3d 450, 462–63 (4th Cir. 1993)). In Projects Mgmt., the Fourth Circuit upheld a district court's decision to dismiss a claim due to extreme misconduct during discovery because the district court inherently weighed all six relevant factors and thus did not abuse its discretion. Id. at 374, 377. If a court is considering dismissal, each of these factors must be weighted in determining if the test as set forth in Silvestri has been met.[4]

## A. Case Law Analysis

In this Circuit, spoliating conduct meriting dismissal has included a vast array of missteps and transgressions,[5] but not every case of spoliation merits dismissal. See e.g., Suntrust Mortg., Inc., 508 F. App'x at 255 (even though e-mails were fraudulently altered and spoliation did occur, the innocent party was not significantly prejudiced by the occurrence as the original evidence was retrieved and presented before the court for merit determinations). Interestingly, the United States District Court for the Southern District of West Virginia was faced with its own

---

[4] The Fourth Circuit in Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of North Carolina, 508 F. App'x. 243, 254–55 (4th Cir. 2013) implied that district courts are required to consider both the Silvestri test and the Shaffer factors when considering the sanction of dismissal.

[5] Such conduct has included obstruction of discovery consisting of a "woefully inadequate deposition," four month failure to respond to interrogatories, and spoliation of a necessary computer and smart phone, First Mariner Bank, 2014 WL 1652550 at *18; destruction of the relevant automobile in an auto accident case in conjunction with the availability of only incomplete and indefinite evidence preserved by the spoliator, Silvestri, 271 F.3d at 594; use of "Evidence Eliminator" software on a plaintiff's laptop, Taylor, 2012 WL 5473715 at *3; and the destruction of an essential Uninterrupted Power Source unit in an arson case, which may have caused the fire, after notice of the claim and in conjunction with only the availability of inconclusive findings gathered by the spoliators, King, 181 Fed. Appx. at 378.

"broken chair" spoliation case back in 2005. <u>Nichols v. Steelcase, Inc.</u>, No. 2:04-0434, 2005 WL 1862422 (S.D.W.V. Aug. 4, 2005).

In <u>Nichols</u>, a postal worker went to sit at a nearby workstation in order to begin routing mail for the day when the chair immediately collapsed. <u>Id.</u> at *1. After the incident occurred, the chair was pulled from the floor and transported to a side room where it remained "for months, but-maybe even years." <u>Id.</u> at *2 (internal quotation marks omitted). The chair at issue in this case was manufactured by Steelcase, Inc., and the Product Safety Manager for that company acknowledged there had been complaints of a related nature regarding that particular model chair. <u>Id.</u> at *3. The chair, however, disappeared at some unknown time prior to the litigation and could not be produced. <u>Id.</u> at *5.

The chair manufacturer contended, as does Kettler in the present matter, that "[b]ecause there was no evidence to show that the chair was used properly during its lifetime" and plaintiff was under a duty to retain the chair, it was severely prejudiced in defending the action. <u>Id.</u> The injured plaintiff, as Starbucks does here, argued that circumstantial evidence established the defect and that its expert was able to deduce what likely caused the malfunction. <u>Id.</u> Further, the plaintiff in <u>Nichols</u> argued "that the defect identified by his expert was one for which Steelcase had received previous customer complaints" such that the malfunction could be established. <u>Id.</u> In regards to spoliation, the court concluded that the chair was clearly material evidence, but that there was no evidence the plaintiff acted in bad faith or egregious conduct occurred. <u>Id.</u> at 9. The court also concluded that because there were multiple witnesses to the incident, there was both lay and expert testimony supporting the defense that the chair did not malfunction, and there was expert testimony as to possible alternative causes of the malfunction, the absence of the chair did not severely prejudice the defense. <u>Id.</u> at 9–10.

## B. Alternative Sanction Options

One possible alternative to dismissal is a "'spoliation inference,' which is an inference that the evidence no longer available would have been adverse to the party that made it unavailable." Evans v. Medtronic, Inc., No. 3:04cv97, 2005 WL 3547240 at *13 (W.D. Va. Dec. 27, 2005). Such an inference is appropriate if the spoliators (1) should have anticipated litigation surrounding the evidence and "(2) their willful conduct resulted in the destruction of the evidence." Id. at 14. Another alternative is for the Court to award costs or attorney's fees, which are generally appropriate in four situations: (1) "fees in favor of the moving party as an alternative to dismissal or an adverse jury instruction;" (2) "discovery costs to the moving party if additional discovery must be performed after a finding that evidence was spoliated;" (3) an award of a prevailing party's reasonable expenses, including attorney's fees, in addition to another spoliation sanction; and (4) an award of a prevailing party's "reasonable costs associated with the motion plus any investigatory costs into the spoliator's conduct," in addition to another spoliation sanction. Goodman v. Praxair Services, Inc., 632 F. Supp. 2d 494, 524 (D. Md. 2009) (emphasis in original).

### III. ANALYSIS

In its Counterclaim, Starbucks alleged the following: (1) breach of express warranties as to "all Carlo Patio chairs purchased for use by STARBUCKS stores," Doc. 31 at 27; (2) breach of implied warranties as to "all Carlo Patio chairs purchased for use by STARBUCKS stores," id.; (3) breach of contract as to all those Carlo chairs delivered that did not meet "their intended purpose . . . and/or failed to meet industry standards for leg strength," id. at 29–30; and (4) negligent misrepresentation as to all Carlo chairs by representing they were "free from defects in design, workmanship and materials, and that the Carlo Patio chair was suitable and safe for use

as outdoor seating furniture," id at 30. In order for the remedy of dismissal to be proper, the Court must be satisfied that, after analyzing the Shaffer factors, either (1) Starbucks' "conduct was so egregious as to amount to a forfeiture" of all its claims or (2) the effect of Starbucks' "conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." Silvestri, 271 F.3d at 593.

## A. Egregiousness of Starbucks' Conduct

The Court has already determined that Starbucks' actions in this matter amounted to spoliation. Doc. 62. The question now presented is whether under the first two Shaffer factors, "(1) the degree of the wrongdoer's culpability" and "(2) the extent of the client's blameworthiness," 11 F.3d at 462–63, Starbucks' actions were so egregious as to merit forfeiture of its claims under Silvestri. The origins of Starbucks' willful destruction of the Carlo chairs can be traced to September 20, 2013, when Starbucks Legal indicated on the SGS "Service Request Form" that it desired the sample chair be destroyed/discarded following testing. Doc. 71, Ex. 14. This Court found that Starbucks' "duty to preserve started in October 2013," yet from that point forward Starbucks Legal directed the destruction of over 7,000 Carlo chairs. Doc. 62 at 8. This action is compounded by the fact that on April 10, 2014, Kettler demanded Starbuck' preserve any chairs it claimed were defective, but Starbucks destroyed an additional 1,584 chairs between April 10, 2014 and May 7, 2014 when the complaint was served, Doc. 44 at 8, and then another 489 chairs after it was served with the present lawsuit. Id. Such conduct was not the result of mere negligence.

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may

be relevant to anticipated litigation." Silvestri, 271 F.3d at 591.[6]   Starbucks cannot claim ignorance as to its responsibilities in this matter, and it is clear from the evidence at hand that Starbucks both knew "the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." Turner, 736 F.3d at 282. The Court **FINDS** that the actions taken by Starbucks in this case were willful, not mere negligence.

In contemplating the level of egregiousness present, Starbucks' conduct in this matter does not rise to the level of conduct present in cases such as Taylor, 2012 WL 5473715, at *6, where the "[p]laintiff installed Evidence Eliminator on his laptop computer three days after [] [the court's] order that he submit to a computer inspection," or Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 514–15 (D. Md. 2010), where ESI was so willfully destroyed by the defendants during litigation that the judge stated it constituted "the single most egregious example of spoliation that I have encountered."   Neither, however, is Starbucks' conduct merely negligent, such as the unexplained loss of the chair at issue in Nichols, 2005 WL 1862422 at *5.

Starbucks' conduct here seems to fall between the two extremes and is comparable to the spoliator's conduct in Silvestri. In Silvestri, the plaintiff, his attorney, and their team of experts preserved the accident vehicle in its post-accident condition for two months while contemplating litigation, but made no effort to prevent spoliation of the vehicle so that the defendant might be able to inspect it. 271 F.3d at 590. Here, the Court is not faced with a situation in which Starbucks merely did nothing to preserve evidence, but rather it took an active role in destroying the vast majority of the evidence upon which it is now basing its claims. Starbucks' conduct is

---

[6] This principle is not exclusive to the Fourth Circuit, as in the Ninth Circuit "'[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" Apple Inc. v. Samsung Electronics Co., Ltd, 888 F. Supp. 2d 976, 991 (N.D. Ca. 2012) (quoting In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1067 (N.D. Ca. 2006)).

somewhat mitigated as it did preserve what it characterized as an appropriate sampling of the chairs, and did make said chairs, along with the "Roberts" chair, available to Kettler for inspection. Doc. 91 at 5, 11.

When analyzing these facts under the two <u>Shaffer</u> factors, "(1) the degree of the wrongdoer's culpability" and "(2) the extent of the client's blameworthiness," 11 F.3d at 462–63, the Court **FINDS** that Starbucks had a significant degree of culpability in the matter and that because "Starbucks Legal" itself was responsible for the destruction of the chairs, the client is blameworthy.

## B. Prejudice Suffered

Plaintiff primarily argues that the 200 chair sample is not representative of the approximately 13,000 chairs sold to Defendant over the course of the business relationship and on which Defendant is basing its claims. Doc. 77 at 2. It argues that Defendant's expert has admitted the alleged defect does not apply to all chairs and as such, simply taking a sample of chairs would have been inappropriate regardless of any spoliation. <u>Id.</u> In analyzing the voluminous records before this Court, Kettler's specific arguments as to prejudice suffered are summarized as follows: Starbucks willfully destroyed material evidence on which it is basing its claims and then proceeded to unilaterally create a mathematically improper and unrepresentative sample of chairs and cannot explain how the sample was created, how the chairs were maintained, where they came from, how old they were, and whether or not they were damaged during the collection process. <u>See</u> Doc. 77 at 2. Kettler claims that its inspection of the sample chairs on January 13, 2015 did little to cure the prejudice it suffered as their inspector, Vice-President of Finance Mark Mannix, "was not able to determine the age of the chairs, the stores from which the sample came, how long the chairs had been in use, whether the chairs had been

misused, whether the chairs were in the same condition as when they left their respective stores, or whether the chairs in the sample were in the same condition as the chairs Starbucks already destroyed." Id. at 30.

Starbucks argues that Kettler would not be prejudiced in defending its claims because Starbucks is not the only purchaser of Carlo chairs to have complained of chair failures and weld breaks. Doc. 91 at 3. For example, Starbucks claims that Kettler has access to fifty-seven Carlo chairs returned to the Kettler warehouse by Fat Canary in Williamsburg, Virginia, and that at least eight of the chairs have weld breaks. Id. Overall, Starbucks is proceeding under a theory similar to that in Nichols, where the court permitted the case to move forward because "the defect identified by his expert was one for which [the defendant] Steelcase had received previous customer complaints." 2005 WL 1862422, at *5. Starbucks further argues that Plaintiff's findings following their examination of the 200 chairs in January should be discounted as the inspection was not conducted by an expert but rather by Kettler's Vice-President of Finance. Doc. 91 at 5.

Lastly, Starbucks argues that Kettler is not prejudiced because Starbucks' theory is partially one of design defect. Id. at 22. It argues that case law supports the theory "that the potential for prejudice is much less in a design defect case" following spoliation because the defect would theoretically apply to every item in the product line. Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 80 (3d Cir. 1994); see also Quaile v. Carol Camble Co.,No. 90-7415, 1993 WL 53563 (E.D. Pa. 1993) (where summary judgment was not granted after the destruction of an allegedly defective lamp because the theory was that all the lamps were defectively designed). Since Starbucks relies on this theory, it is important to note that in each of the cases it

cites there was no bad faith in the destruction of the evidence.  Further, Defendant's complaints are not limited to design defects.

## C. Prejudice Analysis

Based upon the evidence in the record, Starbucks is seeking damages as to "all Carlo chairs" purchased within the course of its business relationship with Kettler, but it has destroyed almost ninety-nine (99) percent of them.  According to DAVACO documentation, the entire 200 chair sample may have been pulled from the back of the last truck.[7]  Doc. 77 at 8.  Starbucks has not established that the sample of chairs saved is representative of their age, length of use, degree of maintenance, or exposure to the elements of outdoor use; accordingly, Kettler's defense will be prejudiced by Defendant's actions.  Further, there is prejudice to the judicial process in this matter as chairs were destroyed after Plaintiff specifically requested that the chairs be saved and even after the Complaint was served.

## D. Alternative Remedies

The only relevant alternative remedy to dismissing the action is the remedy Plaintiff has requested, which is limiting Starbucks' damages to the remaining 200 chair sample.  This would severely limit the amount of damages Starbucks can potentially recover if it succeeds on the merits; therefore, the Court will exercise its discretion and not award Kettler its reasonable attorney's fees and expenses incurred in the prosecution of its spoliation motion.

### III. CONCLUSION

Starbucks' spoliating conduct in conjunction with the undisciplined manner in which the 200 chair sample was created has prejudiced Kettler's ability to defend these claims to the extent that the balance of the <u>Shaffer</u> factors weigh in Kettler's favor.  These factors are weighed as

---

[7] "The truck is loaded to go to the recycler with the last of the chairs at Anaheim. Do you want us to pull off 200 to save back?"  Doc. 77, Ex. 1.

14

follows: (1) Starbucks has a significant degree of culpability; (2) Starbucks Legal initiated the spoliation; (3) the judicial process has been prejudiced due to the judicial resources and Plaintiff's attorney's fees and costs devoted to the spoliation issue and the fact that Starbucks destroyed evidence even after having been requested not to do so; (4) Kettler has suffered prejudice in defending the claims against it because Starbucks destroyed almost ninety-nine (99) percent of the evidence at issue and created a 200 chair sample that does not appropriately represent all the chairs for which Starbucks is seeking damages; (5) rather than dismissing the case, the Court will limit the amount of damages Starbucks can recover to that arising from the remaining 200 chairs and the "Robert's Chair;" and (6) the public interest in the integrity of the judicial process requires the preservation of evidence in order to promote the just, speedy, and inexpensive resolution of civil litigation. Fed. R. Civ. P. 1.

For the reasons set forth herein, Starbucks' conduct merits limitation of the damages it can recover to that arising from the 200 remaining sample chairs and the "Robert's Chair." Because this ruling severely limits the damages available to Starbucks if it prevails upon the merits of its claims, the Court exercises its discretion to **DENY** Kettler's prayer for attorney fees and costs incurred in the prosecution of its spoliation motion. Accordingly, Kettler's Motion is **GRANTED IN PART** and **DENIED IN PART**.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

                                    /s/
                         _____
                         Henry Coke Morgan, Jr.
                         Senior United States District Judge
                              HENRY COKE MORGAN, JR.
                         SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 7th, 2015